SANTINI FERTILIZER Co., demandante y apelante, *v.* ALBERT E. LEE & SON y JOSÉ MOISÉS COLÓN, demandados y apelados.

No. 5852.—*Sometido:* Diciembre 2, 1932.—*Resuelto:* Diciembre 13, 1932.

*Rafael Buscaglia,* abogado de la apelante; *Carlos J. Torres,* abogado de la razón social apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

En 5 de agosto de 1924, José Moisés Colón reconoció deber a la mercantil Finlay Waymouth & Lee, Inc., la cantidad de $3,000, sobre los cuales se obligó a pagar intereses al tipo de 10 por ciento anual por el término de un año, vencedero el día 5 de agosto de 1925. Este reconocimiento de deuda se hizo constar en escritura pública otorgada en 9 de agosto de 1924, y según dicha escritura en la misma fecha José Moisés Colón suscribió una obligación por la expresada cantidad a la orden de la mercantil Finlay, Waymouth & Lee, Inc., vencedera el 5 de noviembre de 1924, acordándose que esta obligación sería substituída por otra a vencer el día 5 de febrero de 1925, la que sería substituída por otra a vencer el día 5 de mayo del mismo año, y últimamente por otra a vencer el día 5 de agosto del propio año 1925, en cuya fecha se comprometió el deudor a pagar todo el capital reconocido de $3,000, siendo convenido que al firmar cada una de esas tres obligaciones pagaría el deudor por adelantado los intereses correspondientes al período de prórroga sobre los $3,000.

Para garantizar el pago de esta suma, con sus intereses durante las prórrogas mencionadas y de $300 más por los intereses devengados desde el vencimiento de la última prórroga, costas y gastos judiciales necesarios y honorarios de abogado, José Moisés Colón, con el consentimiento de su esposa, constituyó a favor de la corporación Finlay, Waymouth & Lee, Inc. primera hipoteca sobre la finca que ha originado este litigio. Esta hipoteca fué debidamente inscrita en el registro de la propiedad en 18 de agosto de 1924.

Santini Fertilizer Company obtuvo sentencia a su favor contra José Moisés Colón en cobro de dinero, y en 16 de mayo de 1930 adquirió por adjudicación en pública subasta el dominio de la finca hipotecada. Posteriormente Albert E. Lee & Son, alegando que la obligación hipotecaria había sido endosada a su favor, ejecutó la hipoteca y adquirió por adjudica-

ción, en 17 de diciembre de 1930, la misma finca que había sido adquirida con anterioridad por la demandante y apelante Santini Fertilizer Co., quien no fué legalmente notificada de los procedimientos en la ejecución de la hipoteca.

La Corte de Distrito de San Juan decretó la nulidad del procedimiento ejecutivo hipotecario, y como ninguna de las partes ha establecido recurso de apelación contra este pronunciamiento, nos limitamos a consignar los hechos necesarios para la resolución de las cuestiones planteadas en el presente recurso. La demandante apela únicamente del pronunciamiento sobre costas y de aquella parte de la sentencia que declara sin lugar la demanda en cuanto se pide que se declare inexistente y extinguida la hipoteca constituída para el pago de la obligación contraída por José Moisés Colón.

Sostiene la parte apelante que la obligación principal garantizada por hipoteca es una obligación mercantil que se extingue y muere por prescripción a los tres años de vencida, extinguiéndose también la hipoteca.

A nuestro juicio esta contención no puede sostenerse. La hipoteca se establece sobre la cosa y no sobre el crédito personal. La ley fija un término de veinte años para la prescripción de la acción hipotecaria. Dice Morell en el tomo 4, pág. 74, de su obra sobre "Legislación Hipotecaria":

"'La hipoteca—como dice Aragonés—produce una acción que es el derecho en movimiento, y esta acción se consideraba en nuestro Derecho como de naturaleza mixta, asignándole los autores una vida legal de treinta años.'

"La ley Hipotecaria fijó su duración en veinte años, por lo que se afirmaba su naturaleza personal. El Código Civil establece que la acción personal dura quince años, y la acción hipotecaria, veinte (art. 1964). La acción al dirigirse contra la finca es real, y no altera su naturaleza el hecho de prescribir a los veinte años y no a los treinta. Como dice Barrachina, las servidumbres prescriben también a los veinte años, y no cabe duda alguna de que se trata de una acción real."

En la exposición de Motivos de la Ley Hipotecaria de 1861 se dice que la hipoteca es un verdadero derecho real

adherido al cumplimiento de la obligación a que sirve de garantía y que sigue siempre a la cosa hipotecada, cualesquiera que sean las manos a que pase, y a pesar de los cambios que ocurran en la propiedad que grava. Galindo, Legislación Hipotecaria, tomo primero, pág. 112.

En el párrafo que copiamos a continuación, tomado también de la Exposición de Motivos, se expresa aun con mayor claridad el carácter de la hipoteca y las relaciones del acreedor con el deudor y con la finca gravada:

"Para conocer la importancia y necesidad del sistema adoptado por la Comisión, debe tenerse en cuenta que el fin de la legislación hipotecaria es asentar el crédito territorial en la base de la seguridad de la hipoteca y del pago de lo ofrecido. El que presta con hipoteca, más bien que a la persona, puede decirse que presta a la cosa; el valor de la finca hipotecada es la causa, porque entra en la obligación; el deudor es sólo el representante de la propiedad; al prestamista nada le interesan el crédito, el estado de fortuna, las cualidades morales de la persona a quien da su dinero, porque para nada las tiene en cuenta; lo que le importa es que la finca baste a reintegrarle en su día de lo que dió. Su crédito no es un crédito *personal,* es un *crédito real,* no depende de la persona del deudor, no está sujeto a sus vicisitudes; lo que importa al acreedor es que la hipoteca no desaparezca: adherido, por el contrario, su crédito a la finca, no se altera por la pérdida del crédito personal de su dueño."

El comentarista Manresa se expresa así:

"*Prescripción por término de veinte años.*—Por dicho término prescribe la acción hipotecaria. Precepto es éste que se halla en un todo conforme con lo establecido en el art. 128 de la ley Hipotecaria vigente, reproducción del 134 de la anterior.

"El mayor plazo fijado para la prescripción de esta clase de acciones, con relación a las meramente personales, se funda, como desde luego se comprende, en la naturaleza especial de aquéllas, las cuales exigían dicho aumento como compensación a la garantía hipotecaria ofrecida por las mismas y perdida por la prescripción extintiva. Sin embargo, en algún Código, como sucede en el de Guatemala, el plazo de prescripción de la acción para el cobro de una deuda asegurada con hipoteca es el de quince años. En cambio, el de Uruguay y otros exigen el lapso de treinta años." Manresa, 12 Código Civil Español, edición de 1921, pág. 925.

Opinamos que cuado se lleva a cabo un préstamo asegurado por hipoteca, la acción personal se refunde en la acción real hipotecaria. En realidad los préstamos a que sirve de garantía la hipoteca son de carácter personal y si interpretáramos que al prescribir la acción personal la acción hipotecaria muere por inexistencia de la obligación principal, no podría aplicarse prácticamente la prescripción de veinte años y el legislador habría realizado, al fijarla, un acto inútil. La jurisprudencia americana coincide con este criterio en el extremo de que la garantía hipotecaria responde de la deuda, irrespectivamente de la acción personal. Esta jurisprudencia se basa principalmente en que, aunque la acción personal no pueda hacerse efectiva por la prescripción, sin embargo la deuda no se extingue y queda sujeta a la hipoteca. *Conway* v. *Caswell,* 48 S. E. 957; *Downey* v. *Mariority,* 81 Conn. 842.

Además, cuando se lleva a cabo un préstamo asegurado por hipoteca, el acreedor tiene derecho a todas las garantías que puedan favorecerle, y una de ellas es que su crédito no prescriba mientras no hayan transcurrido los veinte años que fija la ley para la prescripción de la acción hipotecaria.

Alega la demandante que la corte erró al resolver que la obligación cuyo cobro perseguía Albert E. Lee & Son a través del procedimiento hipotecario no era una obligación futura en relación con el otorgamiento de la escritura de hipoteca que la garantizaba, y que la misma no puede perjudicar a la demandante, que es un tercero. Arguye la apelante que garantizando la hipoteca obligaciones futuras, no podía perjudicar a tercero, por razón de no haberse hecho constar en el registro la contracción de la obligación futura.

Opinamos que la corte inferior no cometió el error que se le atribuye. Con fecha 5 de agosto de 1924, José Moisés Colón reconoció deber a la mercantil Finlay, Waymouth & Lee, Inc., la cantidad de $3,000, sobre los que se obligó a pagar intereses al 10 por ciento anual por el término de un año, vencedera el día 5 de agosto de 1925. Esta es la obligación contraída por el deudor y ésta fué la obligación

ratificada por escritura pública en 9 de agosto de 1924, y aunque el deudor convino en firmar un pagaré a vencer en determinada fecha, para sustituirlo por otro hasta suscribir el último, que vencería en 5 de agosto de 1925, o sea la fecha que se convino al contraerse la deuda desde el primer momento, la verdad es que se trata de los mismos $3,000 y de la misma obligación que desde el 5 de agosto de 1924 se comprometió a pagar José Moisés Colón en 5 de agosto de 1925. Es claro que no se trata de una obligación futura que no hubiese nacido cuando José Moisés Colón reconoció la deuda, sino de una obligación específica, con vida real y positiva en el acto en que se contrajo la obligación y se otorgó la escritura. En cuanto a la alegación de la demandante de que es un tercero que no puede ser perjudicado, baste con decir que la hipoteca se inscribió con los más amplios detalles en el registro de la propiedad, según consta de la certificación del registrador que obra en autos.

Alega por último la demandante que la corte inferior erró y abusó de su discreción al no imponer las costas, gastos y honorarios de abogado de este litigio a los demandados.

La corte inferior, en sus conclusiones de hecho, declara que la demandada Albert E. Lee & Son tenía conocimiento del embargo y de la venta del inmueble a favor de Santini Fertilizer Co., y también del error en que había incurrido el registrador con anterioridad a la iniciación del procedimiento ejecutivo. Este procedimiento se llevó a cabo sin haber sido notificada la demandante, Santini Fertilizer Company, dueña entonces del mencionado inmueble. La corte inferior declara nulo el referido procedimiento ejecutivo hipotecario. Albert E. Lee & Son negó en su contestación bajo juramento, por falta de suficiente información y creencia, que la demandante adquiriera la finca objeto de este litigio en ejecución de sentencia o por algún otro procedimiento o pleito, alegando en contrario que en el supuesto de que esto fuese cierto, tal título es nulo en cuanto a la finca que fué objeto de la hipoteca. Se deduce de los autos y de las conclusiones de hecho

de la corte inferior que Albert E. Lee & Son, a sabiendas de que la finca no pertenecía a José Moisés Colón, en la fecha en que se inició el procedimiento ejecutivo, no se cuidó de notificar a Santini Fertilizer Co. Es verdad que en la demanda, además de la nulidad del procedimiento ejecutivo, se pide que se declare inexistente el crédito hipotecario, pero no es menos cierto que Albert E. Lee & Son se opuso a la nulidad del procedimiento ejecutivo que inició y ultimó sin notificar a la demandante y solicitó que se declarase sin lugar en todas sus partes la demanda. Hemos estudiado detenidamente la prueba y las conclusiones de la corte inferior y creemos que ésta debió ejercitar su discreción, condenando en costas a la demandada Albert E. Lee & Son.

*Por las razones expuestas debe confirmarse la sentencia apelada, con la única modificación de condenarse en costas a la demandada Albert E. Lee & Son.*